CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

8/1/2018
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

JEFFREY SPENCER, JR., *ET AL.*,

                      *Plaintiffs,*

v.

MACADO'S, INC., *ET AL.*,

                      *Defendants.*

CASE NO. 6:18-cv-00005

MEMORANDUM OPINION

JUDGE NORMAN K. MOON

      Plaintiffs are servers, waiters, and bartenders at Macado's restaurants that are owned and operated by Defendants.[1] Defendants are various Macado's holding companies and the parent company's president. Plaintiffs allege Defendants have paid them below minimum wage in three distinct ways. First, Plaintiffs allegedly were required to perform non-tip-producing tasks that were unrelated to their normal work while clocked-in as tipped employees (known as a "dual jobs" violation). Second, they allegedly were required to spend over twenty percent of their time on non-tip-producing tasks that were related to their normal work (a "side work" violation). Third, they allegedly were required to perform unpaid work off the clock. Defendants moved to dismiss, primarily arguing these allegations lack sufficient factual content to be plausible. The Court will dismiss the first and third claims without prejudice, but the second claim survives. Macado's president will also be dismissed without prejudice.[2]

---

[1]     This case is a collective action under the Fair Labor Standards Act. Collective actions allow similarly situated individuals to sue together after a certification process. 29 U.S.C. § 216(b); *See Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 223–27 (3d Cir. 2016) (describing certification). The certification process is not implicated by this motion, which only addresses the allegations of the named Plaintiffs.

[2]     At oral argument, Plaintiffs agreed to dismiss Defendant Richard Macher, Macado's president, without prejudice. Defendant argues for dismissal with prejudice. His liability depends on whether he is an "employer" within the meaning of FLSA. *See Foster v. Gold & Silver Private Club, Inc.*, No. 7:14CV00698, 2015 WL 8489998, at *6 (W.D. Va. Dec. 9, 2015).

## I. STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. "To survive a motion to dismiss, Plaintiffs' factual allegations, taken as true, must 'state a claim to relief that is plausible on its face.'" *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Id.* However, a court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).

## II. FACTS AS ALLEGED

Plaintiffs are current and former servers, waiters, and bartenders at Defendants' restaurants. (Dkt. 72 at ¶¶4, 20, 21). They receive both an hourly wage from Defendants and tips. (*Id.* at ¶4). Defendants pay Plaintiffs as tipped employees, providing a wage below the federal minimum wage for untipped employees. (*Id.* at ¶27). Plaintiffs allege compensation decisions and employment terms are "made through a centralized management team[.]" (*Id.* at ¶26). Macado's leadership implemented this centralized scheme through routine visits of new locations and preparation of new management. (*Id.*). Defendants used the visits to enforce a policy of staffing restaurants with fewer employees than necessary. (*Id.* at ¶27).

This policy required Plaintiffs (1) to perform *unrelated* non-tip-producing tasks while clocked-in as tipped employees ("dual jobs"), (2) to perform *related* non-tip-producing tasks for

---

This analysis requires a fact specific inquiry, and Plaintiffs may be able to plausibly allege that Defendant is an employer. The Court will dismiss him without prejudice. *See Goode v. Cent. Virginia Legal Aid Soc'y, Inc.*, 807 F.3d 619, 626 (4th Cir. 2015) ("[T]hese are precisely the kinds of pleading deficiencies that amendment to the complaint could have cured[.]").

more than twenty percent of their work time while clocked-in as tipped employees ("side work"), and (3) to perform work "off the clock." (Dkt. 72 at ¶27).

The alleged "dual jobs" violation. Plaintiffs allege they were required to perform various forms of non-tipped work that were unrelated to their tipped jobs as servers, waiters, and bartenders. (*Id.* at ¶¶4, 57). This work included: "cleaning bathrooms and scrubbing toilets, cleaning kitchen staff's dishes and utensils, cleaning dishes, taking out trash, [and] scrubbing kitchen floors." (*Id.* at ¶57).

The alleged "side work" violation. Plaintiffs allege they were required to perform various forms of non-tipped work that was related to their tipped jobs. (*Id.* at ¶65). This included: "rolling silverware, refilling sugar caddies, salt and pepper shakers, ice, and condiments, cleaning chairs, tables, booths, and performing pre-closing cleaning tasks (such as vacuuming and/or sweeping the server's assigned area and checking dishes, napkins, and utensils, cleaning the bar, wiping down bottles, restocking beer, cleaning taps and bar, cleaning bar area tables, and washing bar glasses[.]" (*Id.*). Plaintiffs were allegedly required to engage in these tasks one to three hours per shift, which was "in excess of 20% of [Plaintiffs'] work time[.]" (*Id.*).

The alleged "off the clock" violation. Plaintiffs allege they were required to help "other tipped employees deliver food to their customers, filling cups of toothpicks for the cooks to use in cooking/food preparation, washing dishes, cleaning the dining area, and helping/assisting with food preparation." (*Id.* at ¶37). This work occurred "before [Plaintiffs'] scheduled shifts" and was "off the clock." (*Id.*).

Finally, the complaint also contains allegations concerning the putative class members of the collective action, but these allegations are not relevant at this stage. (*Id.* at ¶¶45–53).

## III. ANALYSIS

The FLSA sets the current federal minimum wage at $7.25 an hour. 29 U.S.C. § 206(a)(1)(C). However, if an employee receives tips, their employer may pay them an hourly wage below the minimum wage:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—
>
> (1) the cash wage paid such employee which for purposes of such determination shall be not less than [$2.13 per hour]; and
>
> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and [$7.25 per hour].
>
> The additional amount on account of tips may not exceed the value of the tips actually received by an employee.

29 U.S.C. § 203(m); *Trejo v. Ryman Hosp. Properties, Inc.*, 795 F.3d 442, 447 (4th Cir. 2015) ("An employer can thus pay tipped employees (1) a cash wage of $2.13 plus (2) an additional amount in tips that brings the total wage to the federal minimum wage."). The FLSA defines "tipped employee" to mean "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." *Id.* § 203(t).

The Department of Labor has issued the following regulation to interpret the phrase "more than $30 a month in tips":

> In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short

order cook for the group. Such related duties in an occupation that is a tipped
occupation need not by themselves be directed toward producing tips.

29 C.F.R. § 531.56(e).[3] Plaintiffs' three claims arise out of the intersection of these statutes, regulations, and further Department of Labor guidance.

A.  Count I: FLSA Violation – Unrelated Dual Occupation Violations ("Dual Jobs")

Following 29 C.F.R. § 531.56(e), "[c]ourts recognize 'dual jobs' claims where plaintiffs sufficiently demonstrate that while engaged by an employer as a tipped employee, they spent a portion of their time performing non-tip-producing tasks that were unrelated to their primary role and that more closely resemble tasks traditionally performed in [a] minimum wage occupation[] such as a janitor . . . ." *See Barnhart v. Chesapeake Bay Seafood House Assocs., L.L.C.*, No. CV JFM-16-01277, 2017 WL 1196580, at *4 (D. Md. Mar. 31, 2017).

Here, Plaintiffs allege that they performed some non-tip-producing tasks that were unrelated to their primary role as servers, waiters, and bartenders. These unrelated non-tip-producing tasks included: "cleaning bathrooms and scrubbing toilets, cleaning kitchen staff's dishes and utensils, cleaning dishes, taking out trash, [and] scrubbing kitchen floors[.]" (Dkt. 72 at ¶57). While some of these tasks might be "related" tasks (*i.e.*, taking out the trash and occasionally cleaning dishes or utensils), others are more janitorial in nature and are therefore unrelated to the tipped jobs. *See Barnhart*, 2017 WL 1196580, at *5 ("Duties such as 'mopping and/or deck brushing restaurant floors' and 'removing cigarette butts from the bushes outside of the restaurant,' for example, are tasks that would ordinarily be performed by a restaurant's

---

[3]  This regulation is entitled to *Chevron* deference, which neither party seriously disputes, because the underlying statute is ambiguous about who counts as a tipped employee, Congress has delegated authority to implement the FLSA to DOL, and DOL's regulation is reasonable. *See Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 876–77 (8th Cir. 2011) (assuming *Chevron* deference applied to this regulation for these reasons); *see also Barnhart v. Chesapeake Bay Seafood House Assocs., L.L.C.*, No. CV JFM-16-01277, 2017 WL 1196580, at *6 n.5 (D. Md. Mar. 31, 2017) (discussing why *Chevron* applies to this regulation).

5

janitorial staff. Accordingly, Barnhart has, at the pleading stage, stated a plausible claim for relief under FLSA's 'dual jobs' regulation.").[4]

However, Plaintiffs fail to provide any further factual specificity about approximately how much time was spent on these tasks, how frequently this occurred, or how much employees were being paid (other than generic allegations that they were being paid below minimum wage, or at a "tip credit wage"). Importantly, in analyzing the claim, the Court does not consider the paragraph 33 of the complaint. (Dkt. 72 at ¶33). In this paragraph, Plaintiffs confusingly allege that they "routinely spend one (1) to three (3) hours of each shift performing *unrelated*, kitchen/housekeeping *related* 'dual occupation' side work including, but not limited to: scrubbing kitchen floors, cleaning the kitchen staff's general work area, washing and stocking dishes, vacuuming and sweeping, cleaning bathrooms and scrubbing toilets, and taking out trash, restaurant artifacts and décor, lights, blinds, windows." (*Id.* (emphasis added)). At oral argument, Plaintiffs conceded that their allegations could have been more clear, and the allegations appear to simply contain a typographical error (although the Court is unsure whether the "related" or "unrelated" is the error). But Plaintiffs cannot aggregate adjectives to create new categories of FLSA claims and then leave the Defendants to guess as to their real intentions. The allegations in this paragraph will not be considered as part of either the "dual jobs" or "side work" allegations. This is important because, without these allegations, the complaint only alleges that these unrelated tasks were performed for an unknown amount of time and that Plaintiffs were paid an unknown amount that was below minimum wage. (Dkt. 72 at ¶¶57, 58).

Compare those allegations to a recent FLSA overtime case where the Fourth Circuit said that "plaintiffs must provide sufficient detail about the length and frequency of their unpaid work

---

[4] Defendants note Plaintiffs' counsel has characterized these tasks differently in other lawsuits. An attorney's prior pleadings in a different case for a different party are irrelevant.

to support a reasonable inference that they worked more than forty hours in a given week." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017) (citations and quotation marks omitted). The court noted that a plaintiff might do this in many different ways, but some suggested possibilities included: "estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility." *Id.* The focus should be on evaluating whether the complaint provides "some factual context that will 'nudge' [Plaintiffs'] claim 'from conceivable to plausible.'" *Id.* at 777 (citation omitted).[5]

Likewise, district "[c]ourts in this Circuit have held that a [FLSA overtime] plaintiff must sufficiently indicate the compensation he was entitled to and the number of hours worked without proper compensation to survive a motion to dismiss." *Ray v. Bon Secours--St. Francis Xavier Hosp., Inc.*, No. 2:12-CV-01180-DCN, 2012 WL 4591922, at *2 (D.S.C. Oct. 1, 2012) (citing *Jones v. Imaginary Images, Inc.*, No. 12–217, 2012 WL 3257888, at *11 (E.D.Va. Aug. 8, 2012)). Other district courts have required analogous specificity for minimum wage claims. *See Seagram v. David's Towing & Recovery, Inc.*, 62 F. Supp. 3d 467, 473 (E.D. Va. 2014) ("[T]he complaint must at least allege approximate wages such that the Defendants will be able to frame a meaningful response."); *Walker v. Serv. Corp. Int'l*, No. 4:10CV00048, 2011 WL 1370575, at *7 (W.D. Va. Apr. 12, 2011) ("[A] wage and hour complaint, whether brought under the FLSA or as a breach of contract action, must at least allege approximate wages.").

---

[5] Admittedly, the Fourth Circuit has previously approved of a complaint that did not "specify the names of the aggrieved employees, their wages, the weeks in which the employees were entitled to overtime pay, or the particular records that the hospital had failed to maintain." *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342 (4th Cir. 2005). However, this discussion occurred in a pre-*Twombly* and *Iqbal* universe, and so this Court applies the Fourth Circuit's more recent discussion of pleading requirements in *Hall*.

In sum, the Court concludes that Plaintiffs' allegations lack sufficient "factual context [to] 'nudge' their claim 'from conceivable to plausible.'" *Hall*, 846 F.3d at 777 (4th Cir. 2017) (citation omitted). While Plaintiffs need not set out allegations concerning all potential class members at this stage, they must at least include sufficient factual context about the named Plaintiffs. *See Walker v. Serv. Corp. Int'l*, No. 4:10CV00048, 2011 WL 1370575, at *7 (W.D. Va. Apr. 12, 2011) ("The Complaint does not need to set out this information for all of the proposed class members, just Ms. Walker."). The claim will be dismissed without prejudice. The Court does not address Defendants' alternative workweek rule defense as to this claim.

B.  **Count II: FLSA Violation – Related Dual Occupation Violations ("Side work")**

Plaintiffs' "side work" claim also grows out of 29 C.F.R. § 531.56(e). As relevant here, that regulation states:

> [A dual jobs] situation is distinguishable from that of a waitress who spends *part of her time* cleaning and setting tables, toasting bread, making coffee and *occasionally* washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

*Id.* (emphasis added). These examples of tasks that are related to tipped work, but are not tip-producing themselves, are known as "side work." To be clear, an employer can receive a tip credit towards meeting its minimum wage obligations when an employee performs some amount of side work; however, problems arise when an employee engages in these related tasks more than "part of the time" or "occasionally." For example, an employee who spent ninety percent of his time in non-tip-producing work could not be paid as a tipped employee for all of that time just because it was related to the ten percent of his work that did produce tips. According to the regulation, the employee should no longer be considered to be a tipped employee for those tasks.

But intermediate cases are harder, and so the parties disagree about what "part of the time" and "occasionally" mean. Because Section 531.56(e) "does not address the impact of an employee performing related duties more than 'part of [the] time' or more than 'occasionally,'" *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 877 (8th Cir. 2011), the Department of Labor has issued further guidance interpreting these regulations and attempting to clarify the ambiguity.

### 1. The twenty percent rule and deference to agency interpretations of regulations

In 1988, the DOL published a Handbook that stated "where the facts indicate . . . that tipped employees spend a substantial amount of time (*in excess of 20 percent*) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties." *Fast*, 638 F.3d at 877–78 (quoting U.S. Dep't of Labor, Wage & Hour Div., Field Operations Handbook § 30d00(e) (Dec. 9, 1988)) (emphasis added). This is the central interpretation that the parties focus on, but it was neither the DOL's first nor last interpretation of Section 531.56(e)'s "part of the time" and "occasionally" language. Accordingly, the Court briefly walks through the history of the DOL's interpretation of this language, before discussing what degree of deference this interpretation is due.

First, in 1980, DOL issued an opinion letter stating that some after-hours cleanup duties still could be considered part of a tipped occupation. *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 1980 WL 141336, at *1 (Mar. 28, 1980). This letter simply states the same general framework as the dual jobs regulation, reiterating the "part of the time" formulation; it does not provide further details about how much of an employees' time that might constitute. *Id.*

Five years later, in 1985, DOL issued another opinion letter stating that an employer could not use the tip credit when tipped employees were engaging in untipped "opening responsibilities" that "constitute[] 30% to 40% of the employee's workday." *See* U.S. Dep't of

9

Labor, Wage & Hour Div., Opinion Letter, 1985 WL 1259240, at *2–*3 (Dec. 20, 1985). This letter did not express any opinion on whether an employer could take the tip credit when non-tip-producing activities constituted less than thirty or forty percent of the employee's shift; it provided a data point, not a floor.

The twenty percent rule was then enunciated in the version of the Wage and Hour Division's Field Operations Handbook issued on December 9, 1988. The Handbook, in explaining Section 531.56(e), states that "where the facts indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties." U.S. Dep't of Labor, Wage & Hour Div., Field Operations Handbook § 30d00(e) (Dec. 9, 1988). The DOL followed this twenty percent rule for at least the following twenty years.

Then, in January 2009, at the very end of President George W. Bush's administration, the DOL wrote, but never mailed, an opinion letter acknowledging confusion about the application of the twenty percent rule. U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (Jan. 16, 2009), available at https://www.dol.gov/whd/opinion/FLSA/2009/2009_01_16_23_FLSA.pdf (last viewed July 28, 2018). The letter stated the inquiry should be based on whether the tasks were "core" or "supplemental" to the tip-producing occupation, and cited to a different list of tasks to guide this inquiry. *Id.* The letter stated "[t]hese principles supersede our statements in [the Handbook]," and promised that "[a] revised [Handbook] statement will be forthcoming." *Id.* However, the letter was never delivered, and the DOL "decided to withdraw it for further consideration" a month later (after President Barack Obama's administration began). *Id.*

A new Handbook was not released until 2016, and that version of the Handbook reiterated the twenty percent rule. *See* U.S. Dep't of Labor, Wage & Hour Div., Field Operations Handbook § 30d00(f) (Dec. 15, 2016), available at https://www.dol.gov/whd/foh/ (last viewed July 28, 2018). This version included a disclaimer that the Handbook "is not used as a device for establishing interpretative policy." *Id.*

Within this context, the primary question facing the Court is what degree of deference should be given to the Handbook's twenty percent rule. "The Fourth Circuit has yet to address this specific question; other courts, however, have examined the issue at length." *Barnhart v. Chesapeake Bay Seafood House Assocs., L.L.C.*, No. CV JFM-16-01277, 2017 WL 1196580, at *5 (D. Md. Mar. 31, 2017). "[T]he majority of courts," *id.* at *6, have granted some degree of deference to the Handbook's interpretation of regulation. *See, e.g., Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 879 (8th Cir. 2011) (applying *Auer* deference); *Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1284 (10th Cir. 2017) (relying on the Handbook and *Fast* without discussion of *Auer* deference); *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 106 F. Supp. 3d 729, 734 (D.S.C. 2015) (citing *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 159 (2012) while following its use of *Skidmore* deference). *But see Chavez v. T&B Mgmt., LLC*, No. 1:16CV1019, 2017 WL 2275013, at *7 (M.D.N.C. May 24, 2017) (finding *Auer* deference inappropriate).

While the disclaimer and 2009 letter raise serious concerns about the application of *Auer* deference, the Court need not resolve any questions about *Auer* deference here. This is because the twenty-percent rule does "reflect a body of experience and informed judgment" and so is at least "entitled to 'a measure of respect' under the less deferential *Skidmore* standard." *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 399 (2008) (avoiding questions as to application of

*Chevron* and *Auer* deference and finding agency interpretation reasonable under *Skidmore*).[6] In *Skidmore v. Swift & Co.*, when interpreting a different FLSA provision, the Supreme Court stated:

> We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

323 U.S. 134, 140 (1944). The Supreme Court and Fourth Circuit have indicated that, at least in some circumstances, it may be best to consider internal agency guidelines (like the Field Operations Handbook) under *Skidmore* deference. *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference. . . . Instead, interpretations contained in formats such as opinion letters are 'entitled to respect' under our decision in *Skidmore*, but only to the extent that

---

[6] Some courts have granted *Auer* deference to the twenty percent rule, which "ordinarily calls for deference to an agency's interpretation of its own ambiguous regulation." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012); *see, e.g., Fast*, 638 F.3d at 879 ("We conclude that the DOL's interpretation of § 531.56(e) is entitled to *Auer* deference."). But difficult questions are raised by the 2009 flip-flop because *Auer* deference is arguably inappropriate when an agency's interpretation "conflicts with a prior [agency] interpretation." *Christopher*, 567 U.S. at 155. Other difficult questions are raised by the Handbook's explicit disclaimer that it "is not used as a device for establishing interpretative policy." *See* U.S. Dep't of Labor, Wage & Hour Div., Field Operations Handbook § 30d00(f) (Dec. 15, 2016), available at https://www.dol.gov/whd/foh/ (last viewed July 28, 2018). At least two other courts have also found that this disclaimer undercuts any argument for *Auer* deference. *See Probert v. Family Centered Servs. of Alaska, Inc.*, 651 F.3d 1007, 1012 (9th Cir. 2011) ("[I]t does not appear to us that the FOH is a proper source of interpretive guidance. The handbook itself says that it 'is not used as a device for establishing interpretative policy.'" (citations omitted)); *Chavez*, 2017 WL 2275013, at *6. Many of the courts that have applied *Auer* deference have not considered these problems. Because this motion can be resolved through application of lesser *Skidmore* deference, the Court does not work through these questions exhaustively.

those interpretations have the 'power to persuade.'" (citations omitted)); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 n.6 (2002) (holding the EEOC's "Compliance Manual" was entitled to *Skidmore* deference); *Reno v. Koray*, 515 U.S. 50, 61 (1995) (holding BOP's internal agency guideline "is still entitled to some deference"); *Minor v. Bostwick Labs., Inc.*, 669 F.3d 428, 438 (4th Cir. 2012) ("We afford agency interpretations that do not have the force of law, like agency manuals and litigation documents, respect to the extent that they possess the power to persuade."); *U.S. Dep't of Labor v. N. Carolina Growers Ass'n*, 377 F.3d 345, 353–54 (4th Cir. 2004) ("The DOL's interpretative bulletins, however, were adopted without notice and comment rulemaking and without a formal adjudication, and accordingly, lack the force of law. The Supreme Court has made clear that in such situations, we defer to the agency's interpretation only to the extent that the interpretation has the power to persuade.").

There are persuasive, even though not controlling, reasons to follow the twenty percent rule here. First, as discussed above, the rule has been applied for the overwhelming majority of the past thirty years. The month-long blip in 2009 does not entirely undermine the persuasive force of this reservoir of DOL practice. Second, the twenty percent rule is an eminently reasonable interpretation of the regulation. Doing something twenty percent of the time would qualify as doing it more than "occasionally" or "part of the time" within the common meaning of those phrases. *See Irvine v. Destination Wild Dunes Mgmt., Inc.*, 106 F. Supp. 3d 729, 734 (D.S.C. 2015) ("[A]side from any deference due to the agency's use of the twenty percent rule, such a standard would be a perfectly valid interpretation of the FLSA and § 531.56(e), even if Plaintiff presented it as a completely novel theory for the Court's consideration."). Third, Defendants argue that the twenty percent rule would be hard for them to manage. This argument

is undercut by DOL's long experience administering the rule. Additionally, employers are already directed to keep various payroll records for all tipped employees, including:

> . . .
> (4) Hours worked each workday in any occupation in which the employee does not receive tips, and total daily or weekly straight-time payment made by the employer for such hours[, and]
>
> (5) Hours worked each workday in occupations in which the employee receives tips, and total daily or weekly straight-time earnings for such hours.

29 C.F.R. § 516.28(a). Because employers must already have a mechanism for measuring time tipped employees spend in non-tip-producing occupations, any further administrative burden imposed by the twenty percent rule is likely minimal. And so this Court concludes, alongside at least one other court in this circuit, that the twenty percent rule is at least entitled to *Skidmore* deference. *See also Irvine*, 106 F. Supp. 3d at 734 (applying the twenty percent rule after discussing the *Skidmore* standard as enunciated in *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 159 (2012)).

Having concluded that the twenty percent rule is entitled to *Skidmore* deference, the Court concludes that Plaintiffs' allegations that the related "side work" duties were "in excess of twenty (20) percent of [Plaintiffs'] work time" plausibly state a related "side work" violation. (Dkt. 72 at ¶66). Importantly, and unlike the "dual jobs" and "off the clock" allegations, Plaintiffs have pled additional "factual context [to] 'nudge' their claim 'from conceivable to plausible'" by including further allegations that this "side work" took up one to three hours of each shift. *Hall*, 846 F.3d at 777 (4th Cir. 2017) (citation omitted); dkt. 72 at ¶39. Plaintiffs also adequately pled that these tasks were related and non-tip producing. (*See id.* at ¶65 (listing tasks including "rolling silverware, refilling sugar caddies, salt and pepper shakers, ice, and condiments, cleaning chairs, tables, booths, and performing pre-closing cleaning tasks (such as

vacuuming and/or sweeping the server's assigned area and checking dishes, napkins, and utensils, cleaning the bar, wiping down bottles, restocking beer, cleaning taps and bar, cleaning bar area tables, and washing bar glasses")). Admittedly, Plaintiffs have not alleged the specific dollar amount that they were being paid, relying instead on general allegations they were paid a tip-credit wage that was below minimum wage. But the Court is convinced by the totality of the factual content the complaint provides that the allegations here plausibly allege a violation. Furthermore, Defendants surely have records identifying the exact amounts Plaintiffs were paid, undermining arguments that Defendants are not given notice of the claims made against them.

### 2. The "workweek rule" defense

Defendants respond by arguing that the "workweek rule" nevertheless requires dismissal of this count because Plaintiffs do not allege that their hourly rate over the course of any particular week was less than minimum wage. The workweek rule, or *Klinghoffer* rule, states that the FLSA's requirements are satisfied "so long as the total weekly wage paid by an employer meets the minimum weekly requirements of the statute, such minimum weekly requirement being equal to the number of hours actually worked that week multiplied by the minimum hourly statutory requirement." *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960); *see Hagee v. Capital Tacos, Inc.*, No. 3:17CV00076, 2018 WL 2248607, at *4 (W.D. Va. May 16, 2018) ("[T]here is no statutory violation 'so long as each employee received during each week compensation equal to or exceeding the product of the total number of hours worked and the statutory minimum hourly rate.'" (quoting *Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193, 1198 (4th Cir. 1969))).

But the workweek rule, which was recognized "years before Congress amended the FLSA to include § 203(m)'s tip-credit provision," *Romero v. Top-Tier Colorado LLC*, 849 F.3d

15

1281, 1285 (10th Cir. 2017), does not answer the question before the Court. This is because the Second Circuit's opinion in *Klinghoffer* and the Fourth Circuit case adopting it, *Blankenship*, both were considering fact patterns where one employer was paying one employee for working one job. But Section 531.56(e), discussed at length above, treats a tipped employee as working two different jobs when that employee is also assigned to non-tip-producing "side work" more than "occasionally" or "part of the time." For the tipped job, the employer would need to pay the $2.13 hourly wage and then the employees could receive a tip-credit up to the federal minimum wage. 29 U.S.C. § 203(m). Critically, "no tip credit can be taken for his hours of employment in" the second, un-tipped job. 29 C.F.R. § 531.56(e). And so any wage paid for an un-tipped job that is below the federal minimum wage is a *per se* illegal wage, regardless of any tips that may be received for a separate job in the course of the week. Accordingly, the Fourth Circuit has never applied the workweek rule to side work claims, and other courts have correctly been skeptical of Defendants' theory. *See Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1285 (10th Cir. 2017) (summarizing these arguments and remanding for further consideration); *McLamb v. High 5 Hosp.*, 197 F. Supp. 3d 656, 661 (D. Del. 2016) (rejecting workweek rule defense when plaintiff alleged twenty percent of time was spent on side work).[7] While the workweek rule makes good sense when analyzing how much an employee is being paid for one job, it does not allow an employer to take tips from a tip-producing job and transfer them to a non-tip-producing job worked by the same employee. *See also Chavez v. T & B Mgmt., LLC*, 286 F. Supp. 3d 742, 744 (M.D.N.C. 2017) ("Of course, to adopt Defendants' argument on this

---

[7] Admittedly, some courts have taken the opposite approach. *See, e.g., Kirchgessner v. CHLN, Inc.*, 174 F. Supp. 3d 1121, 1125–26 (D. Ariz. 2016); *Hart v. Crab Addison, Inc.*, No. 13-CV-6458 CJS, 2014 WL 2865899, at *11 (W.D.N.Y. June 24, 2014). The Court does not find these opinions persuasive because they reflexively incorporate the workweek rule without working through the differences between the original *Klinghoffer* context and tip credit context.

issue would read the DOL's dual occupation rule out of the regulations."). This Court holds that the workweek rule does not apply in this context.

The mismatch caused by applying the workweek rule in this context is further expressed by a hypothetical recently posed by the Tenth Circuit. Imagine an employer who paid their employees nothing at all. However, week after week the employees earned enough tips that their total wages were over the federal minimum wage. Under the workweek rule, this employer would be immune from suit, even though he was not paying his employee the statutory floor. "[T]his reading of § 206(a) [is] impossible to square with § 203(m)'s plain language: the latter explicitly requires employers to pay their tipped employees something, regardless of how much those employees receive in tips." *Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1285 (10th Cir. 2017); *see* § 203(m)(1) ("[T]he cash wage paid such employee . . . shall be not less than [$2.13 an hour]."); *see also Schaefer v. Walker Bros. Enters.*, 829 F.3d 551, 553 (7th Cir. 2016) (noting that the FLSA "require[s] some cash payment from the employer . . . no matter how much a worker receives in tips"). This issue, which would have been unimaginable to the courts originally adopting this rule in other contexts because there was no tip-credit, amply demonstrates the mismatch that arises from trying to apply the workweek rule in this context.

In sum, Plaintiffs have plausibly alleged that they were required to spend over twenty percent of their time on non-tip-producing tasks that were related to their primary occupation. This states a side work violation, and the workweek rule does not apply in this context.

C.    **Count III: FLSA Violation – Off the Clock Work**

Plaintiffs' "off the clock" claim alleges that they were forced to perform tasks before work started and that they were not paid for that work. (Dkt. 72 at ¶37). These allegations contain no factual specificity about how frequently this occurred or the approximate amount of

time Plaintiffs spent off the clock. As discussed above, the Fourth Circuit has, in a related context, required plaintiffs to "provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference" that a FLSA violation occurred. *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017). District "[c]ourts in this Circuit have held that a plaintiff must sufficiently indicate the compensation he was entitled to and the number of hours worked without proper compensation to survive a motion to dismiss." *Ray*, 2012 WL 4591922, at *2 (D.S.C. Oct. 1, 2012) (dismissing FLSA overtime case); *Hagee v. Capital Tacos, Inc.*, No. 3:17CV00076, 2018 WL 2248607, at *3 (W.D. Va. May 16, 2018) ("Unlike their original pleading, the amended complaint includes allegations regarding the plaintiffs' regular work schedules, rates of pay, and uncompensated work time."). Because Plaintiffs' factual allegations do not address these requirements, Plaintiffs' allegations lack sufficient "factual context [to] 'nudge' their claim 'from conceivable to plausible.'" *Hall*, 846 F.3d at 777 (4th Cir. 2017) (citation omitted).[8] This claim will be dismissed without prejudice.

**D.     Prejudgment interest and liquidated damages**

Finally, Plaintiffs list prejudgment interest as a requested remedy, and Defendants ask the Court to strike that potential remedy. The parties agree that Plaintiffs cannot receive both prejudgment interest and the FLSA's liquidated damages. *See also Hamilton v. 1st Source Bank*, 895 F.2d 159, 166 (4th Cir. 1990) ("In *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 715–16 (1945), the United States Supreme Court held that FLSA's liquidated damages were provided in

---

[8]     While the Court agrees with Defendants' more general argument about Plaintiffs' failure to sufficiently allege this claim, the Court does not credit Defendants' argument based on 29 C.F.R. § 785.47. Defendants quote only selectively from the regulation, which goes on to say their desired *de minimis* rule "applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities." *Id.* Taking all reasonable inferences in Plaintiffs' favor, the alleged off-the-clock tasks would take longer than the sort of *de minimis* tasks excepted by the regulation.

lieu of calculating the costs of delay—which is the function of prejudgment interest—and therefore that a claimant could not recover both prejudgment interest and liquidated damages."). But liquidated damages are not mandatory under the FLSA, *see* 29 U.S.C. § 260, and so the Court need not strike prejudgment interest as a remedy at this point because Plaintiffs may end up not being entitled to liquidated damages.

## IV. CONCLUSION

The Court will dismiss Plaintiffs' "dual jobs" and "off the clock" claims for failure to plausibly allege that Defendants violated the FLSA. Both claims will be dismissed without prejudice, and Plaintiffs indicated at the hearing on this motion that they will seek leave to amend. The Court will evaluate any motion for leave to amend separately. The "side work" claim will survive because Plaintiffs have plausibly alleged a FLSA violation by alleging that they were required to spend more than twenty percent of their time on related, non-tip-producing tasks. The Court will not strike prejudgment interest at this juncture. An appropriate order will issue.

Entered this __1st__ day of August, 2018.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE