CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
07/08/2019
JULIA C. DUDLEY, CLERK
BY: s/ F. COLEMAN
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JEFFREY SPENCER, JR., *ET AL.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> MACADO'S, INC., <br><br> *Defendant*. | CASE NO. 6:18-cv-00005 <br><br><br> MEMORANDUM OPINION <br><br><br> JUDGE NORMAN K. MOON |

This matter is before the Court upon Defendant Macado's, Inc.'s partial motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. 107). This case is a collective action brought under the Fair Labor Standards Act (FSLA) by current and former Macado's servers and bartenders who allege that Macado's has paid them below minimum wage in three distinct ways. First, Macado's allegedly required Plaintiffs to perform non-tip-producing tasks that were unrelated to their normal work while clocked in as tipped employees (a "dual jobs" claim). Second, Macado's allegedly required Plaintiffs to spend over twenty percent of their time on non-tip-producing tasks that were related to their normal work (a "side work" claim). Third, Macado's allegedly required Plaintiffs to perform unpaid work off the clock before their scheduled shifts.

Macado's seeks to dismiss Plaintiffs' "dual jobs" and "side work" claims on the basis of a recent Department of Labor (DOL) opinion letter and Handbook update. The Court finds that these materials are not entitled to *Auer* or *Skidmore* deference, and the Court will therefore deny Macado's motion to dismiss.

## I. LEGAL STANDARD

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim; it "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). The Court must take all facts and reasonable inferences in favor of the plaintiff, disregard any legal conclusions, and not credit any formulaic recitations of the elements. *See Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).

## II. FACTUAL & LEGAL BACKGROUND

### A. Factual Background

Plaintiffs originally filed this action on January 10, 2018. (Dkt. 1). On August 1, 2018, the Court granted Macado's first motion to dismiss in part, dismissing without prejudice Plaintiffs' "dual jobs" and "off-the-clock" claims, primarily because Plaintiffs had not provided sufficient factual specificity about how much time was spent on unrelated non-tip producing tasks and how frequently Plaintiffs were required to perform "off-the-clock" work. (Dkts. 88; 89). Plaintiffs' "side work" claim survived. (*Id.*). Plaintiffs' subsequently amended the complaint, bringing all three claims again. (Dkt. 105 ("Complaint")).

Plaintiffs Jeffrey Spencer, Cheyenne Williams, and Travis Hostetter are current and former employees of Macado's Lynchburg location. (*Id.* ¶¶ 1, 6–8). They receive both an hourly wage and tips. (*Id.* ¶¶ 6–8). Macado's pays / paid Plaintiffs as tipped employees, providing a wage below the federal minimum wage for untipped employees. (*Id.* ¶ 52). Plaintiffs allege that Macado's maintained a policy of staffing restaurants with fewer employees than necessary. (*Id.* ¶ 13). In turn, this policy of understaffing required Plaintiffs (1) to

perform *unrelated* non-tip-producing tasks while clocked-in as tipped employees ("dual jobs"), (2) to perform *related* non-tip-producing tasks for more than twenty percent of their work time while clocked in as tipped employees ("side work"), and (3) to perform work "off the clock" before their scheduled shifts. (*Id*. ¶ 13).

In Count One (Plaintiffs' "dual jobs" claim), Plaintiffs allege Macado's required them to perform various forms of non-tipped work unrelated to their tipped jobs as servers and bartenders. (*Id.* ¶ 53). Such unrelated work included "cleaning bathrooms and scrubbing toilets, cleaning kitchen staff's dishes, cleaning dishes, taking out trash, [and] scrubbing kitchen floors." (*Id.*). Plaintiffs allege that they "and putative class members routinely spend one (1) to three (3) hours of each shift performing tasks entirely unrelated to their tip-producing duties." (*Id*. ¶ 19).

In Count Two (Plaintiffs' "side work" claim), Plaintiffs also allege they were required to perform various forms of non-tipped work that was related to their tipped jobs. (*Id*. ¶ 61). Such related work included "refilling sugar caddies, salt and pepper shakers, ice, and condiments, cleaning chairs, tables, booths, and performing pre-closing cleaning tasks []such as vacuuming and/or sweeping the server's assigned area and checking dishes, napkins, and utensils, cleaning the bar, wiping down bottles, restocking beer, cleaning taps and bar, cleaning bar area tables, and washing bar glasses[.]" (*Id*.). Plaintiffs were allegedly required to engage in these tasks for one to three hours per shift, "in excess of 20% of [Plaintiffs'] work time." (*Id*. ¶¶ 35, 61, 63).

In Count Three (Plaintiffs' "off-the-clock" claim), Plaintiffs allege they were required to perform "off the clock" work such as "helping other tipped employees deliver food to their customers, filling cups of toothpicks for the cooks to use in cooking/food preparation, washing dishes, cleaning the dining area, and helping . . . with food preparation." (*Id.* at ¶ 68). This work occurred "before and/or after [Plaintiffs'] regularly scheduled shifts," "at least one (1) to two (2)

3

hours per week." (*Id.* ¶ 34).

In the present motion to dismiss, Macado's seeks to dismiss only Counts One and Two under Rule 12(b)(6).

B.  **Relevant FLSA Provisions and DOL Regulations**

The Court first provides an overview of FLSA's minimum wage provisions and the various regulatory sources of Plaintiffs' "dual jobs" and "side work" claims. FLSA sets the current federal minimum wage at $7.25 an hour. 29 U.S.C. § 206(a)(1)(C). However, if an employee receives tips, their employer may pay them an hourly wage below the minimum wage:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—
>
> (1) the cash wage paid such employee which for purposes of such determination shall be not less than [$2.13 per hour]; and
>
> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and [$7.25 per hour].
>
> The additional amount on account of tips may not exceed the value of the tips actually received by an employee.

29 U.S.C. § 203(m); *Trejo v. Ryman Hosp. Properties, Inc.*, 795 F.3d 442, 447 (4th Cir. 2015) ("An employer can thus pay tipped employees (1) a cash wage of $2.13 plus (2) an additional amount in tips that brings the total wage to the federal minimum wage."). FLSA defines "tipped employee" to mean "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t).

DOL has issued the following regulation to interpret the phrase "more than $30 a month in tips":

> In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the

> employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

29 C.F.R. § 531.56(e). Plaintiffs' claims arise out of the intersection of these statutes, regulations, and further DOL guidance.

With respect to Plaintiffs' "dual jobs" claim in Count One, following 29 C.F.R. § 531.56(e), "[c]ourts recognize 'dual jobs' claims where plaintiffs sufficiently demonstrate that while engaged by an employer as a tipped employee, they spent a portion of their time performing non-tip-producing tasks that were unrelated to their primary role and that more closely resemble tasks traditionally performed in [a] minimum wage occupation[] such as a janitor . . . ." *See Barnhart v. Chesapeake Bay Seafood House Assocs., L.L.C.*, No. CV JFM-16-01277, 2017 WL 1196580, at *4 (D. Md. Mar. 31, 2017).

Plaintiffs' "side work" claim also has its roots in 29 C.F.R. § 531.56(e). As relevant here, that regulation states:

> [A dual jobs] situation is distinguishable from that of a waitress who spends *part of her time* cleaning and setting tables, toasting bread, making coffee and *occasionally* washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

29 C.F.R. § 531.56(e) (emphasis added). These examples of tasks that are related to tipped work, but are not tip-producing themselves, are known as "side work." An employer can receive a tip credit towards meeting its minimum wage obligations when an employee performs some

amount of side work. But issues arise when an employee engages in these related tasks more than "part of the time" or "occasionally." For instance, an employee who spent ninety percent of his time in non-tip-producing work could not be paid as a tipped employee for all of that time just because it was related to the ten percent of his work that did produce tips. Under the regulation, the employee should no longer be considered a tipped employee for those tasks. But intermediate cases are harder. Because § 531.56(e) "does not address the impact of an employee performing related duties more than 'part of [the] time' or more than 'occasionally,'" *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 877 (8th Cir. 2011), DOL issued further guidance interpreting these regulations and attempting to clarify the ambiguity.

In 1988, DOL published a Handbook that stated "where the facts indicate . . . that tipped employees spend a substantial amount of time (*in excess of 20 percent*) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties." *Fast*, 638 F.3d at 877–78 (quoting U.S. Dep't of Labor, Wage & Hour Div., Field Operations Handbook § 30d00(e) (Dec. 9, 1988)) (emphasis added). DOL followed this twenty percent rule for the vast majority of the next thirty years.[1]

In its previous motion to dismiss opinion, the Court declined to decide whether the

---

[1] In January 2009, at the very end of President George W. Bush's administration, DOL wrote, but never mailed, an opinion letter acknowledging confusion about the application of the twenty percent rule. *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (Jan. 16, 2009), available at https://www.dol.gov/whd/opinion/FLSA/2009/2009_01_16_23_FLSA.pdf. The letter stated the inquiry should be based on whether the tasks were "core" or "supplemental" to the tip-producing occupation, and cited to a different list of tasks to guide this inquiry. *Id.* The letter stated "[t]hese principles supersede our statements in [the Handbook]," and promised that "[a] revised [Handbook] statement will be forthcoming." *Id.* However, the letter was never delivered, and DOL "decided to withdraw it for further consideration" a month later (after President Barack Obama's administration began). *Id.* A new Handbook was not released until 2016, and that version of the Handbook reiterated the twenty percent rule. *See* U.S. Dep't of Labor, Wage & Hour Div., Field Operations Handbook § 30d00(f) (Dec. 15, 2016), available at https://www.dol.gov/whd/foh/. This version included a disclaimer that the Handbook "is not used as a device for establishing interpretative policy." *Id.*

"twenty percent" rule was entitled to *Auer* deference—a step some courts have taken but other courts have found inappropriate—because the Court decided the rule was entitled to *Skidmore* deference.[2] The Court found *Skidmore* deference appropriate because the "twenty percent" rule had been applied for most of the past thirty years and because the "twenty percent rule is an eminently reasonable interpretation of the regulation" on its own terms. *Spencer v. Macado's, Inc.*, No. 6:18-cv-00005, 2018 WL 3676990, at *8 (W.D. Va. Aug. 1, 2018) (citing *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 106 F.Supp.3d 729, 734 (D.S.C. 2015) ("[A]side from any deference due to the agency's use of the twenty percent rule, such a standard would be a perfectly valid interpretation of the FLSA and § 531.56(e), even if Plaintiff presented it as a completely novel theory for the Court's consideration.")). The Fourth Circuit has never weighed in on the level of deference courts should afford the "twenty percent" rule, but a majority of courts have applied either *Skidmore* or *Auer* deference to the rule. *Id.*, at *6 (collecting cases).

C.   **Post-November 2018 DOL Developments**

On November 8, 2018—during the pendency of this suit—DOL issued an opinion letter changing the "twenty percent" rule endorsed in its previous guidance.[3] Under the new 2018 interpretation, employers are instructed to consult the "Tasks" section of the Occupational

---

[2]   Under *Auer v. Robbins*, 519 U.S. 452 (1997), courts are required to give controlling weight to an agency's interpretation of its own ambiguous regulations unless that interpretation is "plainly erroneous or inconsistent with that regulation." *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 397 (2008); *see also Kisor v. Wilkie*, No. 18-15, 2019 WL 2605554, at *3 (U.S. June 26, 2019) (reaffirming the viability of *Auer* deference in appropriate circumstances). Under the less deferential standard set out in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), agency interpretations of their own regulations are entitled to a "measure of respect" if they "reflect a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Id.* at 400.

[3]   *See* U.S. Department of Labor Wage and Hour Division, Opinion Letter FLSA2018-27 (Nov. 8, 2018), available at https://www.dol.gov/whd/opinion/FLSA/2018/2018_11_08_27_FLSA.pdf.

Information Network ("O*NET"), an online job duty database.[4] If a duty is listed as "core" or "supplemental" to the tipped occupation in this database, then it "shall be considered directly related to the tip-producing duties" of the job, and "[n]o limitation shall be placed on the amount of these duties that may be performed . . . as long as they are performed contemporaneously with the duties involving direct service to customers or for a reasonable time immediately before or after performing such direct-service duties." Employers may not take a tip credit for tasks not listed on the O*NET task list. *See generally Callaway v. DenOne LLC*, No. 1:18-cv-1981, 2019 WL 1090346, at *6 (N.D. Oh. Mar. 8, 2019) (describing new opinion letter).

On February 15, 2019, DOL issued a revised Handbook echoing the November 8 opinion letter. The relevant section of the Handbook references the "dual jobs" scenario laid out in 29 C.F.R. § 531.56(e), and explains that the dual jobs regulation "permits the employer to take a tip credit for *any time* the employee spends in duties related to the tipped occupation, even though such duties are not themselves directed toward producing tips." *See* Field Operations Handbook § 30d00(f)(2) (emphasis added). The Handbook further notes that the Wage and Hour Division will consult the O*NET and 29 C.F.R. § 531.56(e) to determine whether duties are related or unrelated to the tip-producing occupation. *Id.* § 30d00(f)(3). The Handbook provides:

> An employer may take a tip credit for any amount of time that an employee spends on related, non-tipped duties performed contemporaneously with the tipped duties—or for a reasonable time immediately before or after performing the tipped duties—regardless whether those duties involve direct customer service. . . . For example, the core tasks currently listed in O*NET for waiters and waitresses . . . include: cleaning tables or counters after patrons have finished dining; preparing tables for meals, which encompasses setting up items such as linens, silverware, and glassware; and stocking service areas with supplies such as coffee, food, tableware, and linens. In addition, O*NET lists garnishing and decorating dishes in preparation for serving as a supplemental task for waiters and waitresses. An employer may take a tip credit for any amount of time a waiter or waitress who is a tipped employee spends performing these related duties.

---

[4] *See* http://online.onetcenter.org.

*See Esry v. P.F. Chang's China Bistro, Inc.*, 373 F.Supp.3d 1205, at *1208–09 (E.D. Ark. Mar. 22, 2019) (outlining Handbook update).

### III. ANALYSIS

Macado's moves under Rule 12(b)(6) to dismiss Count One (Plaintiffs' "dual jobs" claim) and Count Two (Plaintiffs' "side work" claim) in light of DOL's November 8, 2018 opinion letter and subsequent Handbook update abandoning the "twenty percent" rule and relying on the O*NET list to define tasks "related" to tip-producing work. Macado's argues that Plaintiffs' "dual jobs" claim must be dismissed because "the duties that Plaintiffs allege to be unrelated"—including, for instance, cleaning bathrooms and floors, and washing dishes—are now deemed "related" to Plaintiffs' tip-producing work by DOL and the O*NET list. (Dkt. 107 at 9–10). With respect to Plaintiffs' "side work" claim, Macado's contends that Plaintiffs fail to state a claim because the "side work" violation they allege is premised entirely on the "twenty percent" rule that DOL has now abandoned. (*Id*. at 3–8). Macado's contends that the new DOL opinion letter and Handbook update merit both *Auer* deference and *Skidmore* deference. (*Id*.).

### A. Whether DOL's November 8, 2018 Opinion Letter and February 15, 2019 Handbook Update are Entitled to *Auer* or *Skidmore* Deference

The question of how much deference, if any, the Court should give DOL's new opinion letter and Handbook update ("DOL's new interpretation") is relevant to Macado's arguments regarding both Counts One and Two. Before specifically addressing Counts One and Two, the Court first analyzes the threshold issue of whether *Auer* or *Skidmore* deference is appropriate.

Macado's first argues that the Court should defer to DOL's new interpretation under *Auer v. Robbins*, 519 U.S. 452 (1997). Under *Auer*, "the Court is required to give controlling weight to an agency's interpretation of its own ambiguous regulations unless that interpretation is

9

'plainly erroneous or inconsistent with that regulation,'" *Callaway*, 2019 WL 1090346, at *5, or unless the interpretation does not "reflect the agency's fair and considered judgment on the matter in question." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012). A court should not afford a new agency interpretation *Auer* deference if the new interpretation "creates unfair surprise to regulated parties," which "may occur when an agency substitutes one view of a rule for another." *Kisor v. Wilkie*, No. 18-15, 2019 WL 2605554, at *10 (U.S. June 26, 2019) (noting that the Supreme Court has "only rarely given *Auer* deference to an agency construction "conflict[ing] with a prior" one) (internal quotations and citations omitted).

Here, the relevant regulation is plainly ambiguous, describing a "waitress who spends *part of her time* cleaning and setting tables, toasting bread, making coffee and *occasionally* washing dishes," without defining the terms "part of the time" or "occasionally." 29 C.F.R. § 531.56(e) (emphasis added). The regulation also does not "unambiguously specify which tasks are 'related' to the tipped occupation." *Callaway*, 2019 WL 1090346, at *5. Nonetheless, the Court declines to give *Auer* deference to DOL's new interpretation purporting to eliminate the "twenty percent" rule and rely on the O*NET list to define "related" tasks.

The Court reaches this decision because "significant signs" indicate that DOL's new interpretation does not "reflect the agency's fair and considered judgment on the matter in question." *Id.*, at *6–7 (declining to give *Auer* deference to DOL's new interpretation). These signs include that the new interpretation "reverses 30-year-old agency policy" and that the issuance of the new interpretation "coincided with a change in administration," "strongly suggest[ing] that the change is a matter of policy, not an effort to determine the meaning of the regulation." *Id*. Moreover, DOL's new interpretation "contradicts the regulation as it plainly reads" by "say[ing] there is no limit on the amount of related duties a server can perform and be

paid the tipped rate" when the regulation "clearly places a temporal limit on the amount of related duties an employee can perform" and still be paid the tipped rate. *Esry*, 373 F.Supp.3d at 1210 (declining to give *Auer* deference to DOL's new interpretation). *See also Cope v. Let's Eat Out, Inc.*, 354 F.Supp.3d 976, 986 (W.D. Mo. 2019) (declining to give new DOL interpretation *Auer* deference for the same reasons and because to defer to DOL's new interpretation reversing the "longstanding" twenty percent rule "would result in unfair surprise" to plaintiffs). As the Supreme Court recently made clear, *Kisor*, 2019 WL 2605554, at *10, it would be inappropriate to apply *Auer* deference under these circumstances.

Macado's next argues that the Court should give DOL's new interpretation *Skidmore* deference. *Skidmore* deference only requires that a court give "the Department's interpretation a measure of deference proportional to the 'thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'" *Christopher*, 567 U.S. at 159 (quoting *Skidmore*, 323 U.S. at 140). For the same reasons the Court finds it inappropriate to afford DOL's new interpretation *Auer* deference, the Court also finds *Skidmore* deference inappropriate. These reasons include the abrupt change in a longstanding agency interpretation, the extent to which the new interpretation's timing suggests political motivations rather than any genuine interpretive change, and the extent to which DOL offered no "evidence of any thorough consideration for reversing course" on the twenty percent rule. *See Cope*, 354 F.3d at 986 (declining to give new interpretation *Skidmore* deference "[f]or similar reasons" to those weighing in favor of not applying *Auer* deference). *See also Esry*, 373 F.Supp.3d at 1211 (ostensibly giving DOL's new interpretation *Skidmore* deference but then finding the new interpretation "not persuasive" for the same reasons given for not applying *Auer* deference).

In sum, the Court declines to give DOL's new interpretation either *Auer* or *Skidmore* deference. With this threshold question decided, the Court now turns to Macado's specific arguments under Rule 12(b)(6) with respect to Counts One and Two.

### B. Count One: Plaintiffs' "Dual Jobs" Claim

In Count One, Plaintiffs allege that Macado's has failed to pay them minimum wage for "unrelated 'dual occupation' job duties, such as (but not limited to) cleaning bathrooms and scrubbing toilets, cleaning kitchen staff's dishes and utensils, cleaning dishes, taking out trash, [and] scrubbing kitchen floors." (Complaint ¶ 53). Elsewhere in the amended complaint, Plaintiffs allege they perform other "unrelated" duties like "cleaning the kitchen staff's general work area," "stocking dishes," "vacuuming and sweeping," and "cleaning restaurant artifacts, decor, lights, blinds, [and] windows." (*Id.* ¶ 19). Macado's moves to dismiss this count because the duties "Plaintiffs allege to be unrelated are, in fact, by definition related to Plaintiffs' tip-producing work" under DOL's new interpretation, which points to the O*NET list of tasks and work activities to define which tasks are "related" to tip-producing work. (Dkt. 107 at 8–9).

Although Macado's is correct that a significant number of the tasks Plaintiffs list as "unrelated" appear on the O*NET list as "related" tasks,[5] Macado's argument for dismissal of Count One nonetheless fails for several reasons. First, for the reasons described above, the Court need not defer to DOL's new interpretation or that interpretation's total deference to the activities on the O*NET list in assessing what duties are "related" to tip-producing work. The Court determined in its first motion to dismiss opinion that "[w]hile some of the[] tasks" Plaintiffs allege in Count One "might be 'related' tasks (*i.e.*, taking out the trash and occasionally cleaning dishes or utensils), others are more janitorial in nature and are therefore unrelated to the

---

[5] *See* https://www.onetonline.org/link/summary/35-3031.00.

tipped jobs." *Spencer*, 2018 WL 3676990, at *3. That reasoning remains sound. Second, Macado's mischaracterizes Plaintiffs' allegations in Count One, arguing that the only work Plaintiffs "claim they performed" that was "unrelated to their job duties" is "(1) cleaning bathrooms; (2) washing dishes; and (3) cleaning floors." (Dkt. 107 at 9). But, as described above, Plaintiffs' allegations include more than these three tasks.

Third, even if the Court deferred to DOL's new interpretation and the activities deemed "related" on the O*NET list, Plaintiffs allege that they regularly completed tasks that are not expressly listed as related on the O*NET list, including regularly (as opposed to "occasionally") cleaning kitchen staff dishes and utensils, cleaning other dishes, and cleaning restaurant artifacts, decor, lights, blinds, and windows. (Complaint ¶¶ 19, 53). Thus, taking the complaint in the light most favorable to Plaintiffs, regardless whether the Court defers to the O*NET list and DOL's new interpretation, Plaintiffs sufficiently allege the regular completion of tasks unrelated to their tip-producing work to state a "dual jobs" claim. Count One therefore survives.

### C. Count Two: Plaintiffs' "Side Work" Claim

In Count Two, Plaintiffs allege that they performed related "dual occupation" side duties (*i.e.*, "side work") "in excess of 20 percent of their time at only a tip credit wage and without receiving the applicable FLSA minimum wage." (Complaint ¶ 61). Macado's moves to dismiss Count Two because it is entirely premised on the "twenty percent" rule that DOL has now abandoned and because the "side work Plaintiffs allege they performed falls within the job duties" DOL's new interpretation now maintains "tipped employees may perform without limitation." (Dkt. 107 at 3, 6).

Macado's entire argument is premised on the assumption that the Court will give either *Auer* or *Skidmore* deference to DOL's new interpretation. But, for the reasons analyzed above,

the Court finds it inappropriate to apply either form of deference to DOL's new interpretation. Although DOL purported to abandon the "twenty percent" rule in its November 2018 opinion letter and subsequent February 2019 Handbook update, this new agency interpretation is no impediment to the Court applying the twenty percent rule in this case. As the Court previously noted in its prior motion to dismiss opinion, "the twenty percent rule is an eminently reasonable interpretation of the regulation. Doing something twenty percent of the time would qualify as doing it more than 'occasionally' or 'part of the time' within the common meaning of those phrases." *Spencer*, 2018 WL 3676990, at *8 (citing *Irvine*, 106 F. Supp. 3d at 734 ("[A]side from any deference due to the agency's use of the twenty percent rule, such a standard would be a perfectly valid interpretation of the FLSA and § 531.56(e), even if Plaintiff presented it as a completely novel theory for the Court's consideration.")). Accordingly, Macado's arguments in favor of dismissing Count Two fail.

## IV. CONCLUSION

For the reasons stated above, the Court declines to give either *Auer* or *Skidmore* deference to DOL's new interpretation purporting to eliminate the "twenty percent rule" and alter procedures for determining whether a tipped employee's tasks are related to the employee's tip-producing work. The Court will deny Macado's motion to dismiss Counts One and Two. An appropriate accompanying order will issue.

Entered this \_\_8th\_\_ day of July, 2019.

*/s/ Norman K. Moon*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE